# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RACHEL B.,

      Plaintiff,

  v.

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

      Defendant.

No. 1:20-cv-12717

**OPINION**

## APPEARANCES:

Richard L. Frankel
Jennifer L. Stonage
BROSS & FRANKEL, P.A.
725 Kenilworth Ave, Ste. 2
Cherry Hill, NJ 08002

    *On behalf of Plaintiff.*

Rachel E. Honig
Acting United States Attorney
U.S. DEPARTMENT OF JUSTICE
    OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

David E. Somers, III
Special Assistant United States Attorney
SOCIAL SECURITY ADMINISTRATION
    OFFICE OF THE GENERAL COUNSEL
P.O. Box 41777
Philadelphia, PA 19101

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on an Appeal by Plaintiff Rachel B.[1] ("Plaintiff") from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Commissioner"). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

## I.    BACKGROUND

The Court recites herein only those facts necessary for its determination of this Appeal.

### A.  Administrative History

On February 22, 2017, Plaintiff protectively filed for Disability Insurance Benefits and Supplemental Security Income pursuant to Title II and Title XVI of the Social Security Act, alleging disability beginning November 19, 2016. (AR 15). Both applications were denied initially on August 17, 2017, and upon reconsideration on October 13, 2017. (AR 15, 125, 136). Upon Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a video hearing on June 3, 2019. (AR 15, 33, 140, 142). In a decision dated August 29, 2019, the ALJ concluded Plaintiff was not disabled. (AR 27). On July 16, 2020, the ALJ's decision became Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1). On September 15, 2020, Plaintiff filed the instant appeal. (Compl., ECF No. 1).

### B.  Plaintiff's Background and Testimony

Plaintiff is a thirty-eight-year-old woman who lives with her mother, stepfather, and her two children in southern New Jersey. (AR 1, 40). She filed for disability alleging endometriosis, pelvic congestion syndrome, pneumonia, anemia, herniated discs, post-traumatic stress disorder,

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by her first name and last initial.

facet joint disorder, degenerative disc disease, anxiety, and nerve damage to extremities. (AR 222).

In a function report dated May 8, 2017, Plaintiff listed her daily activities as taking medications, reading, exercising, cleaning, doing laundry, cooking, and lying down. (AR 230). Her condition affected her ability to lift, walk, sit, climb stairs, bend, stand, reach, and kneel. (AR 234–35). It did not affect squatting, seeing, using hands, understanding, talking, hearing, memory, completing tasks, concentration, following instructions, or getting along with others. (AR 234–35). Plaintiff recorded that she follows written and spoken instructions very well and has no issues with authority figures. (AR 235–36). She handles stress "okay," but has anxiety attacks sometimes, and her ability to handle change depends on the situation. (AR 236).

At her video hearing with the ALJ, Plaintiff testified while she is able to go up and down approximately sixteen steps, she cannot do so more than about five times per day. (AR 41). While she was not cleared by her surgeon to drive at the time of the hearing, in recent years she was able to drive twenty minutes before having to take pain medication. (AR 42). She frequently made short trips to bring her children to and from school, or to go grocery shopping. (AR 42). While grocery shopping, she needed help lifting heavier items, such as packages of water or multiple gallons of milk. (AR 42–43). She testified that her pain made daily household activities difficult to the point where she required breaks and avoided standing for long periods. (AR 48–49).

Plaintiff explained her health deteriorated in July 2018. (AR 49). The cause was uncertain until December when an MRI and x-ray revealed spinal and sciatic issues. (AR 49–50). After having surgery to address these issues, Plaintiff reported thinking "I'm good," but her pain later returned. (AR 50). When asked about improvements from the surgery, she stated her ability to be on her feet, to stand, and to walk have improved. (AR 51). She testified that she has good days and bad days, and on bad days she does not leave the couch. (AR 55–56). Bad days occur three to four

times a week. (AR 56). She reported having to elevate her legs to relieve pain and numbness. (AR 57).

As to her anxiety and depression, Plaintiff testified the depression makes her "not want to go anywhere, see anybody." (AR 52). Her anxiety makes her overthink and panic. (AR 52). An attack can last for five to ten minutes, and she often needs another twenty to thirty-five minutes to recover. (AR 52). Though she felt both have intensified since the surgery, her depression is getting better. (AR 52). She later testified her pain and anxiety are distracting and make focusing difficult. (AR 53). She reported having anxiety attacks "almost daily" since her surgery and reported difficulty sleeping. (AR 54–55).

### C.  Plaintiff's Pertinent Medical History

Plaintiff has been examined by numerous medical professionals over the years and during the pendency of her disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

#### 1.  <u>Allen Auerbach, M.D., Cooper University Hospital</u>

In November 2016, Plaintiff visited Dr. Allen Auerbach at Cooper University Hospital. (AR 317). Her chief complaints were severe back pain and anxiety concerns. (AR 317). Dr. Auerbach found Plaintiff positive for mylagias, back pain, joint pain, and neck pain, and positive for tingling, sensory change, numbness, and paresthesias. (AR 321). Dr. Auerbach also found Plaintiff positive for depression, and that Plaintiff was nervous or anxious. (AR 321). Dr. Auerbach prescribed Lexapro and Norco and reordered other medications. (AR 325).

#### 2.  <u>Caitlin Innerfield, M.D., RA Pain Services</u>

Later in November 2016, Plaintiff visited RA Pain Services complaining of lower back pain radiating into her lower extremities, neck pain, numbness, and tingling that radiated into her

4

lower upper extremities. (AR 334). Dr. Innerfield reported tenderness in Plaintiff's cervical and lumbar spinal regions, and in the trapezius and paraspinous muscles. (AR 337). Spurling's maneuver was negative. (AR 337). Muscle strength in the upper and lower extremities was normal, though there was some loss of feeling in the lower extremities. (AR 338). Dr. Innerfield diagnosed Plaintiff with chronic pain syndrome, radiculopathy in the lumbar region, cervicalgia, depression, and anxiety, and prescribed diclofenac sodium and gabapentin. (AR 338–39). Plaintiff was advised not to drive or operate heavy machinery while on medication. (AR 340).

Plaintiff returned to RA Pain Services several times during 2017. In January 2017, an EMG of Plaintiff's lower upper extremities was normal. (AR 346, 368). An MRI revealed a disc bulge, herniation, and stenosis in the lumbar region, but no manifestations of injury in the cervical region. (AR 346). Spurling's maneuver remained negative. (AR 345, 351). Muscle strength and range of motion in the upper extremities were normal. (AR 345, 351–52). Throughout the visits, examinations consistently revealed ongoing tenderness in the cervical spine region, though muscle strength, reflexes, and range of motion were normal. (AR 344, 351, 356, 360–61, 365, 528, 533–534, 538, 543, 547). Plaintiff's respiratory condition was consistently normal. (AR 344, 351, 357, 361, 365, 528, 534, 538, 543, 547). In May 2017, Plaintiff reported improvement in pain and sleeping when taking gabapentin three times a day and was advised to continue doing so. (AR 363, 365). After an allergic reaction to one medication, her prescription was changed. (AR 355). In April, May, June, July, August, and September, RA Pain reported Plaintiff had stabilized on her doses of medication. (AR 361, 365, 547, 543, 539, 535). Urine drug screen analyses in August and September of 2017 revealed unprescribed medication, which caused Plaintiff to be discharged. (AR 535, 526).

### 3.  Amanda Fox, FNC-P, Kennedy Health Alliance

In February 2017, Plaintiff began seeing Amanda Fox, FNC-P, at Kennedy Health Alliance, reporting concerns of pneumonia, ongoing pain, worsening anxiety, abdominal pain, and a history of anemia. (AR 371–74; *see also* 390–93). Additionally, she complained of occasional shortness of breath, fatigue, sleep disturbance, and joint pain. (AR 373). Nurse Fox assessed Plaintiff as having generalized anxiety disorder, iron deficiency anemia, a history pneumococcal pneumonia, and abdominal pain. (AR 372). Nurse Fox ordered various tests, treatments, and imaging. (AR 372). Plaintiff visited Nurse Fox again in August, September, and October of 2018 for various reasons. (AR 376–89).

### 4.  David Clements, M.D., Cooper University Hospital

In late September 2018, Plaintiff visited Cooper University Hospital complaining of back pain. (AR 488). Physical examination revealed tenderness in the back, reduced motion, antalgic gait, and pain during straight leg raises. (AR 489). In December, Plaintiff returned, complaining of lower back pain and bilateral leg pain, though the leg pain predominated. (AR 500). Review of an MRI performed earlier in December revealed a large herniated disc. (AR 501). Plaintiff decided to proceed with a lumbar discectomy. (AR 501). Dr. Clements performed the surgery in January 2019. (AR 469–84). In a follow-up visit later that month, Plaintiff's condition had "somewhat improved," though some discomfort remained in her legs. (AR 513).

### 5.  Consultative Examinations

Four consulting doctors provided opinions on Plaintiff's disability claim. At the initial stage, Carmen Hodges, Psy.D., evaluated the medical evidence and determined Plaintiff has a severe discogenic and degenerative back disorder. (AR 77). Dr. Hodges also determined the evidence was insufficient to substantiate the presence of a mental disorder. (AR 77). Upon

reconsideration, Thomas Plahovinsak, Ph.D., concluded there was no significant new objective evidence or change in Plaintiff's condition. (AR 104). Dr. Plahovinsak affirmed Dr. Hodges' opinion. (AR 104).

Dr. Caroline Shubeck initially evaluated Plaintiff's symptoms and found Plaintiff's medically determinable impairment can reasonably be expected to produce her pain or other symptoms. (AR 78). However, Plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the objective medical evidence alone, and only partially supported by the total medical and non-medical evidence. (AR 78). In making a residual functional determination, Dr. Shubeck found Plaintiff has some exertional, postural, and environmental limitations. (AR 78–79). Plaintiff was found not disabled and had an RFC of "light." (AR 81, 76). Upon reconsideration, Isabella Rampello, M.D., reached the same conclusions and affirmed Dr. Shubeck's opinion. (AR 107).

### D.  Summary of the ALJ's Findings

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 17). At step two, the ALJ found Plaintiff had severe impairments of lumbar degenerative disc disease with radiculopathy state post discectomy. (AR 17 (citing 20 CFR 404.1520(c) and 416.920(c))). The ALJ also found Plaintiff had a medically determinable impairment of anxiety. (AR 18).

To determine severity of her anxiety impairment, the ALJ considered objective medical evidence, opinion evidence, and Plaintiff's record of treatment. (AR 18). The ALJ also analyzed "the broad functional areas of mental functioning set out in the disability regulations." (AR 19). In the first of these functional areas, the ALJ found Plaintiff had no limitation. (AR 19). In the remaining three, the ALJ found Plaintiff had mild limitations. (AR 19). The ALJ concluded

"[b]ecause the [Plaintiff's] medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1))." (AR 19–20) (emphasis in original).

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (AR 20). As such, the ALJ made the following RFC finding:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must have the ability to change positions every 30–45 minutes while remaining at the work station. The claimant cannot climb ladders/ropes/scaffolds. She is capable of occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant should have no more than occasional exposure to extreme cold as well as fumes, dusts, odors, gases, and poorly ventilated areas. The claimant cannot work around unprotected heights or dangerous machinery. She should have no more than occasional pushing/pulling with the lower extremities.

(AR 20). In making the above determination, the ALJ considered Plaintiff's symptoms and their consistency with the evidence, medical and otherwise. (AR 20). The ALJ followed a two-step process. First, the ALJ determined whether there was an underlying impairment, physical or mental, that can be shown by medically acceptable clinical or laboratory diagnostic techniques and which could reasonably be expected to produce Plaintiff's symptoms. (AR 20). If so, the ALJ "evaluated the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities," taking into consideration all types of evidence in the record. (AR 21). The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are

not entirely consistent with the medical evidence and other evidence in the record." (AR 22). To support this finding, the ALJ compared Plaintiff's testimony to the objective medical evidence and opinion evidence. (AR 22–25).

At steps four and five, the ALJ found Plaintiff capable of performing her past relevant work as well as other work existing in significant numbers in the national economy. (AR 25–26). As such, the ALJ concluded Plaintiff was not disabled. (AR 27).

## II.   <u>LEGAL STANDARD</u>

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Factual findings of the Commissioner are "conclusive" if supported by "substantial evidence." 42 U.S.C. § 405(g). The substantial-evidence standard requires this Court to "ask[] whether [the record] contains 'sufficien[t] evidence' to support the [Commissioner's] factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (emphasis deleted)) (third alteration in original). "Substantial evidence" is not a high evidentiary threshold; it is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Nor may it set aside the ALJ's decision merely because it would have reached a different one. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

The Social Security Administration uses a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. If a plaintiff is found disabled or not disabled at a step, the inquiry stops and the eligibility determination is made. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, if a plaintiff is engaged in substantial gainful work activity the plaintiff will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Step two considers the medical severity of plaintiff's impairment(s). 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If plaintiff's impairment(s) is not severe or has not lasted or is not expected to last for a continuous period of twelve months, the plaintiff is found not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ reviews the medical evidence to determine whether the impairment(s) meets or equals those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, plaintiff is found disabled without considering age, education, or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the plaintiff's residual functional capacity ("RFC") is determined from all the relevant evidence in the record. 20 C.F.R. §§ 404.1520(e), 416.920(e). Step four compares plaintiff's RFC to past relevant work, and past work can still be performed the plaintiff is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether plaintiff can perform other work in the national economy in light of plaintiff's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, and if that work exists in significant numbers in the national economy in the region where plaintiff lives or in several regions in the country, plaintiff will be found not disabled. 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1).

The plaintiff bears the burden of proof at steps one, two, and four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Neither party bears the burden of proof at step three. *Sykes v. Apfel*, 228

F.3d 259, 263 n.2 (3d Cir. 2000) (citing *Bowen*, 482 U.S. at 146 n.5). At step five, the burden shifts

to the Commissioner. *Bowen*, 482 U.S. at 146 n.5.

**III.**   <u>**DISCUSSION**</u>

In her Appeal, Plaintiff identifies three specific alleged errors within the ALJ's decision

regarding her disability benefits claim. The Court will address each of these arguments in turn. For

the reasons that follow, the Court affirms the ALJ's decision.

**A.  Step Two – Severity Determinations**

Plaintiff challenges the severity determinations of the ALJ. First, Plaintiff argues the ALJ

erred by omitting severity determinations for Plaintiff's cervical radiculopathy, respiratory

conditions, or sleep conditions. (Pla. Br. at 14–15). This Court disagrees.

Step two is a "*de minimis* screening device to dispose of groundless claims." *Newell v.

Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Plaintiff must demonstrate something

beyond "a slight abnormality or a combination of slight abnormalities which would have no more

than a minimal effect on an individual's ability to work." SSR 85–28, 1985 WL 56856, at \*3; *see

also Newell*, 347 F.3d at 546; *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

If an ALJ finds in favor of a plaintiff at step two, conclusions that other impairments are nonsevere

are generally harmless errors. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d

Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)) ("Because the ALJ

found in [claimants] favor at Step Two, even if he had erroneously concluded that some of her

other impairments were non-severe, any error was harmless.").

The ALJ found Plaintiff had severe impairments of lumbar degenerative disc disease with

radiculopathy state post discectomy and proceeded beyond step two. (AR 17 (citing 20 CFR §§

404.1520(c), 416.920(c))). As such, it is of no consequence that the ALJ omitted a severity

determination for other conditions and discounted the severity of others based on inconsistent

treatment. *See Salles*, 229 F. App'x at 145 n.2.

Second, Plaintiff alleges the ALJ erred by finding Plaintiff's medically determinable impairment of anxiety nonsevere. (Pla. Br. at 17). This Court again disagrees.

The severity of mental impairments is an individualized factual determination wherein the ALJ looks for a medically determinable impairment and then rates the degree of functional limitations that impairment produces. *See* 20 C.F.R. §§ 404.1520a, 416.920a. Plaintiff's degree of functional limitation is rated in four broad areas[2] on a five-point scale.[3] If the degrees of limitation are "none" or "mild," the impairment is generally not severe, absent evidence to the contrary. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). For a mental impairment to be severe, there must be an "extreme" limitation in one of these areas, or a "marked" limitation in two. 20 C.F.R., pt. 404, subpt. P, app'x 1. The ALJ performed the required analysis and found Plaintiff's anxiety medically determinable but causing no limitation in one functional area and only mild limitation in the others. (AR 19). Collectively, the ALJ relied upon Plaintiff's testimony, complaints to her doctors, examination findings, her diagnosis, the opinions of consultants, and her function report. (AR 18–20). Although Plaintiff argues the evidence indicates more than a minimal limitation, Plaintiff points only to evidence that that the ALJ expressly considered, being the record of treatment and Plaintiff's testimony, and simply disagrees with the conclusion of the ALJ. *Compare* (AR 18) *with* (Pla. Br. at 17). Therefore, the ALJ's severity determination is supported by both law and fact.

Moreover, the ALJ's severity determination did not end the sequential analysis—the ALJ had already found a severe impairment. To the extent Plaintiff is concerned with the ALJ's incorporation of limitations into the RFC determination based upon a severity determination, the

---

[2]  Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace, and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

[3]  None, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

ALJ is required to consider all the relevant evidence in the case record and the total limiting effects of all impairments, even those which are non-severe, in making an RFC determination. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); 20 C.F.R. §§ 404.1545(e), 416.945(e). Even if the ALJ's severity determination as to Plaintiff's mental health was erroneous, that error would be harmless as to step two and the RFC determination. *See Salles*, 229 F. App'x at 145 n.2.[4]

In sum, Plaintiff's claim advanced beyond step two, making any omitted or erroneous severity determination harmless error. Further, the administrative record adequately supports the ALJ's analysis of Plaintiff's mental impairment. Plaintiff's collective challenges to the step two severity determinations fail.

### B. Step Four – RFC Determination

Plaintiff argues the ALJ failed to incorporate limitations of cervical radiculopathy, respiratory conditions, and sleep conditions in the RFC determination. Plaintiff further alleges the ALJ erred in omitting her need to lie down and her medication side effects from the RFC determination. However, the ALJ's RFC determination reflects a thorough review of the various types of evidence in the record and included an evaluation of the intensity and persistence of the symptoms to determine limitations on Plaintiff's capacity for work. (AR 20–25). As he is permitted to do, the ALJ relied on evidentiary inconsistencies and conflicts between Plaintiff's statements and the rest of the evidence. (*See* AR 22–25). A review of the record confirms the existence of the facts relied upon by the ALJ. As such, the ALJ's opinion is supported by substantial evidence, and this Court disagrees with Plaintiff's allegations of error.

---

[4] Plaintiff alleges the ALJ erred in failing to make a severity determination as to her respiratory conditions and failing to incorporate limitations of those conditions into the RFC. For the reasons stated above, failure to make a severity determination was harmless error. Even so, relying on consultative examinations containing environmental limitations, the ALJ decreased Plaintiff's RFC to accommodate Plaintiff's pneumonia. (AR 24). Plaintiff's respiratory conditions were therefore included in the RFC determination, and this aspect of Plaintiff's claim is without merit.

The RFC is the most a plaintiff can still do despite their limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Its determination requires consideration of all the relevant evidence in the case record, 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and the total limiting effects of all impairments, even those which are nonsevere. 20 C.F.R. §§ 404.1545(e), 416.945(e). The ALJ looks for an impairment substantiated by medically acceptable clinical or laboratory diagnostic techniques, considers whether any alleged symptoms are reasonably consistent with the impairment, and then evaluates the intensity and persistence of consistent symptoms to determine their limit on the plaintiff's capacity for work. *See* 20 C.F.R. §§ 404.1529, 416.929.

The ALJ is not expected to present their analysis in a particular format, and their opinion should be read "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The RFC finding must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Where the ALJ rejects evidence, a reason must be provided. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)); *Cotter*, 642 F.2d at 705. The ALJ need not address "every relevant treatment note in . . . voluminous medical records," but must "consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). This allows a reviewing court to properly determine if the decision is supported by substantial evidence under 42 U.S.C. § 405(g). *Cotter*, 642 F.2d at 705. The Court will do so with respect to Plaintiff's limitations of cervical radiculopathy, sleep conditions, and medicinal side effects in turn.

    1.   Cervical Radiculopathy

Plaintiff argues that the "ALJ rejected without any explanation a wealth of evidence establishing Plaintiff's medically determinable cervical . . . conditions." (Pla. Br. at 14). Plaintiff

points to treatment of cervical pain, diagnoses of cervical radiculitis and myofascial, complaints of neck pain, numbness, and tingling that radiates into upper extremities, and cervical muscle tenderness on physical examination. (Pla. Br. at 14).

The ALJ noted Plaintiff was examined after reporting neck pain that radiates to upper extremities, but diagnostic tests were negative in both November 2016 and January 2017. (*See* AR 22, 337, 345). Specifically, RA Pain Services found "Spurling's maneuver was negative for radicular symptoms and she had normal muscle tone and strength in her upper extremities." (AR 22; *see also* AR 337, 345, 351). Additionally, the ALJ relied on "EMG studies of her upper extremities performed on January 9, 2017, [which] showed no evidence of carpal tunnel syndrome, radiculopathy, peripheral neuropathy to explain her symptoms of paresthesias." (AR 20; *see also* AR 346, 368).

The ALJ also noted Plaintiff's function report stated "she spends her day reading, exercising, cleaning, doing laundry, cooking, and lying down" and was able to perform "variety of activities of daily living including exercising and performing household chores." (AR 23–24). And finally, the ALJ referenced Plaintiff's testimony "that she was able to grocery shop, though she needed assistance with lifting pallets of water and she was unable to lift more than 1–2 gallons of milk." (AR 24). These findings are supported by the record. (AR 42, 230–237).

The ALJ's decision reflects a thorough review for evidence of a manipulative limitation associated with Plaintiff's cervical radiculopathy. Finding that objective medical evidence, specifically multiple Spurling's maneuver tests and the EMG study, did not support the alleged intensity of Plaintiff's symptoms or limitations, the ALJ considered other relevant evidence, including Plaintiff's function report and testimony. Moreover, the ALJ provided "a clear and satisfactory explication of the basis" on which his exclusion of a manipulative limitation rests,

which included the "subordinate factual foundations." *See Cotter*, 642 F.2d at 704–705. Much of the evidence which Plaintiff alleges the ALJ ignores, (*See* Pla. Br. at 14), includes records from the same visits that the ALJ expressly acknowledged and referenced. (AR 22–24).

Although the ALJ perhaps could have been more precise about which evidence he was rejecting, *see Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705, "we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 42. The ALJ "must consider and evaluate the medical evidence in the record," *id.*, at a level which allows a reviewing court to properly determine if the decision is supported by substantial evidence under 42 U.S.C. § 405(g), *see Cotter*, 642 F.2d at 705. The ALJ has done so here, and his decision is supported by substantial evidence.

### 2.  Sleep Conditions

The ALJ did not make an explicit finding as to whether Plaintiff had a medically determinable sleep condition, and therefore did not incorporate any associated limitations into the RFC determination. Plaintiff alleges the record includes sufficient evidence to demonstrate medically determinable fatigue. (Pla. Br. at 15). Plaintiff cites to several portions of the record as evidence of "regular[] complain[ts] to her doctor of difficulty sleeping and fatigue." (Pla. Br. at 15 (citing AR 317, 336, 372, 376, 380, 383, 391)).

The ALJ is not expected to comment on "every relevant treatment note" in a lengthy record but must "consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Fargnoli*, 247 F.3d at 42. "[C]onsistent with his responsibilities under the regulations and case law" in this instance meant searching the record for acceptable clinical or laboratory diagnostic techniques establishing a medically determinable impairment which could reasonably produce Plaintiff's alleged sleep conditions. *Id.*; *see also* 20

C.F.R. §§ 404.1529(b), 416.929(b). While the records Plaintiff identifies indicate to varying degrees a history of fatigue, malaise, anemia, and sleep disturbance, Plaintiff points to no medically acceptable clinical or laboratory diagnostic technique substantiating her complaints.[5] As there is no objective medical evidence to substantiate an impairment that could reasonably produce Plaintiff's symptoms, the ALJ was not obligated to take into account the limitations on work which that unsubstantiated impairment might produce

### 3.   Need to Lie Down and Medication Side Effects

Plaintiff alleges it was error to exclude Plaintiff's need to lie down and her medication side effects, all symptoms associated with her concededly severe lumbar degenerative disc disease with radiculopathy status post discectomy, from the RFC determination.

With respect to the need to lie down, Plaintiff relies on her testimony, a reference to lying down as a daily activity in her function report, and her history of back pain to establish error. (Pla. Br. at 19–20). Consistent with the duties imposed by 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), the ALJ noted several inconsistencies in the evidence and the conflicts between Plaintiff's statements and other evidence in the record. (AR 24–25). The ALJ expressly considered Plaintiff's testimony, her function report, and her medical history, rejecting portions where the record contained inconsistencies, and accepting other portions. (AR 20–25). This amounts to "a clear and satisfactory" explanation of the "subordinate factual foundations" of the ALJ's RFC determination as it relates to this issue. *Cotter*, 642 F.2d at 704–705. Simply put, the ALJ stated which evidence

---

[5] The record contains references to laboratory tests for iron deficiency anemia ordered for February 13, 2017. (AR 372–73). These tests at times revealed low hemoglobin, and at others, normal levels. (AR 321, 399, 431, 441–443, 481–482). While the ALJ could have considered Plaintiff's alleged anemia more explicitly, because the record is inconclusive on whether accepted clinical or laboratory diagnostic techniques substantiate anemia as a medical impairment, any error the ALJ may have committed as to Plaintiff's RFC determination on this issue is harmless.

he accepted and rejected, and why. *See Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705. As such, this Court is able to properly review the ALJ's decision and concludes it was supported by substantial evidence. *See Cotter*, 642 F.2d at 705 (citing 42 U.S.C. § 405(g)).

Regarding Plaintiff's side effects, in *Schmidt v. Comm'r Soc. Sec.*, the Third Circuit explained the role of reviewing courts:

> The effect of medication on a claimant's ability to work will be considered if it "can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(c)(3). Factors that will be considered include the "type, dosage, effectiveness, and side effects" of any medication. *Id.* § 404.1529(c)(3)(iv). When assessing the credibility of a claimant's testimony, the adjudicator must consider any subjective effects of medication. SSR 96–7p.
>
> . . . .
>
> We have previously held where the ALJ fails to provide "any explanation for his implicit rejection of [the claimant's] testimony regarding the effects of the medication he took," it is unclear whether such testimony is "not credited or simply ignored." *Stewart v. Secretary of Health, Educ. and Welfare of U.S.*, 714 F.2d 287, 290 (3d Cir.1983). The ALJ is required to include reasoning for rejecting any relevant evidence, and where no reasoning is provided, we generally remand for the ALJ to consider the impact of the medication side effects on the claimant's disability status. *Id.*

465 F. App'x 193, 198–99 (3d Cir. 2012). However, in *Schimdt*, the Third Circuit held remand was not required even though the ALJ did not explicitly address the claimant's side effects in his decision denying benefits. *Id.* at 198. The claimant in *Schmidt* relied on a doctor's notation that it would be unsafe to work while on certain medications and the claimant's own testimony regarding side effects. *Id.* at 199. The Third Circuit found the doctor's notation unpersuasive because the claimant was taking different medications, and no narcotics, at the time of the hearing. *Id.* Further, claimant's testimony "indicate[d] possible side effects, not side effects he personally experienced." *Id.* "[W]here the only probative evidence [of side effects] is the claimant's own conclusory statements," and where "[t]he alleged effects of [claimant]'s medication are not consistent with

18

the medical evidence in the record[,]" an ALJ's failure to consider side effects is not error. *Id*. And when "there is substantial evidence to support an the ALJ's conclusion that [a claimant] did not experience disabling side effects from his medication," there is no error in affirming the ALJ's decision. *Id.*

Here, Plaintiff points to no specific side effects experienced by Plaintiff, but merely alleges a general error by the ALJ in failing to assess the possible effects. (*See* Pla. Br. at 21 ("Such medication *can* lead to significant mental limitations[.]") (emphasis added)). A review of Plaintiff's medical records reveals no objective medical conclusion that Plaintiff's ability to work would be limited by the side effects of medication. At times, records indicate Plaintiff should not drive or operate heavy machinery while on medication. (*See, e.g.*, AR 340). At another point, Plaintiff reported having an allergic reaction to one medication, and her prescription was changed. (AR 355). While Plaintiff's medications were changed several times during the relevant period, there were no recorded complaints of side effects. In fact, after initial adjustments, RA Pain Services reported that Plaintiff was stable on her medication. (AR 361, 365). Additionally, the ALJ noted that Plaintiff was able to perform a myriad of daily activities and household obligations. (AR 23, 24). In her testimony, Plaintiff did not allege she experienced any side effects from her medication. Unlike *Schmidt*, the ALJ did not reject, implicitly or explicitly, any evidence of side effects because the record contains no such evidence. As such, the ALJ's failure to consider side effects that were merely possible but not personally experienced and reported is not an error.

### C. Inconsistent Treatment

Plaintiff contends the ALJ erred by discounting the severity of Plaintiff's conditions based on inconsistent treatment. (Pla. Br. at 21–25). Plaintiff specifically alleges "the ALJ, in finding that Plaintiff treated her back and mental conditions conservatively simply ignored the medical evidence documenting the years of Plaintiff's treatment for her conditions." (Pla. Br. at 22).

Plaintiff argues she sought treatment for her mental condition from her primary care physician and from Nurse Practitioner Stephanie Ferroni,[6] and was treated with various medications. (Pla. Br. at 22). Concerning her back pain, Plaintiff takes particular issue with the ALJ's formulation of the record as containing gap in treatment between September 2017 and August 2018 and argues treatment records with Amanda Fox, NP, display continued pain management treatment during this period.[7] (Pla. Br. 23). In the alternative, Plaintiff asserts that if her treatment is assumed to have been conservative, the ALJ erred nonetheless by drawing adverse inferences without considering her explanations for her treatment decisions. (AR 24).

When determining the extent to which the intensity and persistence of reasonable symptoms of a medically determinable impairment limit a claimant's capacity for work, the ALJ considers objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c). This includes considering "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Alleged functional limitations and restrictions resulting from symptoms diminish capacity for work when they "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft*

---

[6]   In support of this assertion, Plaintiff cites to three pages, each of which contains only cursory references to anxiety, and medication or past treatment thereof. (AR 318, 355, and 371). No records of treatment with Nurse Ferroni were found in the record, and the pages cited are not inconsistent with the ALJ's finding.

[7]   Records of treatment with Nurse Fox are dated October 15, 2018, September 11, 2018, August 28, 2018, and February 13, 2017. (AR 376, 378, 382, 390). There are no records of treatment with Nurse Fox between September 2017 and August 2018. The ALJ's observance of a gap in the record appears to be correct.

*v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). Where the record of treatment does not align with a plaintiff's subjective complaints, the ALJ may consider that inconsistency in the RFC determination but must also consider plaintiff's reasons for noncompliance or inconsistent treatment. *See* SSR 16-3P, 2017 WL 5180304, at *9. Where an ALJ cites specific instances of inconsistencies between alleged limitations and evidence in the record, objective or otherwise, a ruling that the claimant's representations are inaccurate is supported by substantial evidence. *Hartranft*, 181 F.3d at 362. Simply because a record could support opposing findings is not sufficient for reversal or remand. *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003).

The ALJ's characterization of Plaintiff's treatment as inconsistent or conservative is supported by substantial evidence. The ALJ cited specific instances of inconsistencies between alleged limitations and evidence in the record for both Plaintiff's mental and back conditions. (*See* AR 18–22). SSR 16-3P expressly permits an ALJ to make such a finding where the "frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms." SSR 16-3P, at *9. As is also required by SSR 16-3P, the ALJ considered Plaintiff's possible reasons for not complying with or seeking treatment. (*See* AR 18, 21). Further, the ALJ's characterization represents but one factor in a discussion of many supporting the ultimate finding that "the [Plaintiff]'s allegations regarding the severity and disabling nature of her impairments are not consistent with the medical and other evidence of record." (AR 24). For both conditions and their alleged limitations, the ALJ identified the other aspects of the record supporting his finding that the alleged severity of Plaintiff's conditions is not consistent with the evidence. (AR 18, 24 (referring to the opinions of opinions of Disability

Determination Services consultants)).

## **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.


  */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**